UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| JOEL MATIAS, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 3:18-cv-17 (SRU) |
| | : | |
| WARDEN C. CHAPDELAINE, et al., | : | |
| Defendants. | : | |

# INITIAL REVIEW ORDER

On January 3, 2018, Joel Matias, an inmate currently confined at MacDougall-Walker Correctional Institution ("MWCI") in Suffield, Connecticut, brought a civil rights complaint under 42 U.S.C. § 1983 against four Department of Correction ("DOC") employees (Warden Chapdelaine, Counselor Supervisor R. Weldon, Correction Officer Anderson, and Captain Ogando), and Mark Silver, another inmate at MWCI. Matias claims that the defendants violated his Eighth Amendment rights against cruel and unusual punishment, his right to equal protection of the laws under the Fourteenth Amendment, the Americans with Disabilities Act ("ADA"), and various state tort laws. He is suing all defendants in their individual and official capacities and seeks monetary, injunctive, and declaratory relief. On January 9, 2018, the court, *Garfinkel, J.*, granted Matias' motion to proceed *in forma pauperis*. *See* Order # 6. For the following reasons, I dismiss the complaint in part.

I. Standard of Review

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not

required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

II. Factual Allegations

At all relevant times, Matias was confined at MWCI. Compl. ¶ 3. On February 2, 2017, he was transferred from the M-Pod housing unit to the L-Pod housing unit. *Id.* at ¶ 10. Upon arrival, Correction Officer Anderson informed him that he would be placed in cell 21. *Id.* As Matias attempted to enter cell 21, Mark Silver, the other inmate assigned to that cell, became belligerent and blocked Matias' entry. *Id.* at ¶ 11. Silver adamantly expressed to Anderson that he was unwilling to accept a cellmate because he had been granted single cell status and would only accept a cellmate of his choosing. *Id.* at ¶ 12. Silver showed Anderson documentation that his single cell status had been granted, but Anderson ignored his demands. *Id.* at ¶ 13.

After Silver had threatened Matias several times, Matias "did not try to move into cell 21," but Anderson told him that, if he did not enter the cell, he would be taken to segregation. Compl. ¶ 15. Reluctant, Matias entered the cell. *See id.* Approximately ten minutes later, Silver

2

assaulted Matias, rendering him unconscious and causing him severe injuries. *Id.* at ¶¶ 15-16. Matias was immediately transported to UConn Medical Center for treatment. *Id.* at ¶ 16.

At the time of the incident, Matias was disabled and could barely walk without the assistance of medical staff or a walker. Compl. ¶ 17. He was in no condition to defend himself against Silver. *Id.* at ¶ 18. He continues to suffer headaches and neck and back pain as a result of the assault. *Id.*

### III. Analysis

Matias is suing Anderson for violating his Eighth Amendment protection against cruel and unusual punishment by failing to protect him from Silver's assault. *See* Compl. ¶ 20. As for the other three DOC defendants, Chapdelaine, Weldon, and Ogando, Matias claims that they "knew or should have known [that] . . . Silver was assaultive . . . being . . . Unit Manager, Warden, and Classification Supervisor." *Id.* at ¶ 19. He is also raising state law claims of negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress against all defendants and what appears to be assault and battery against Silver. *See id.* at ¶¶ 2, 19.

#### A. Failure to Protect from Harm

Matias claims that Anderson, Chapdelaine, Weldon, and Ogando violated his Eighth Amendment protection against cruel and unusual punishment by failing to protect him from Silver's assault. I conclude that he has stated a plausible Eighth Amendment claim against Anderson but not against the other defendants.

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of . . . inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). "[P]rison

3

officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotations omitted). However, not every injury inflicted by one prisoner on another prisoner establishes constitutional liability on the part of the prison official responsible for the victim. *Id.* at 834.

A prison official violates the prisoner's Eighth Amendment protection against cruel and unusual punishment only when the following two requirements are satisfied. First, the prisoner must prove that the deprivation was "objectively, sufficiently serious . . . ." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 298). If the claim is based on the official's failure to prevent harm, the plaintiff must prove that he is "incarcerated under conditions posing a substantial risk of serious harm." *Id.* To determine whether the prisoner faced an excessive risk of serious harm, courts "look at the facts and circumstances of which the official was aware at the time [s]he acted or failed to act." *Hartry v. County of Suffolk*, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (internal quotations and citation omitted). Secondly, the prisoner must prove that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 302-03). This requirement is based on the principle that "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Id.* (quoting *Wilson*, 501 U.S. at 297). The prison official must have disregarded an excessive risk to the prisoner's health or safety. *See id.* at 837. Whether an official had knowledge of a substantial risk of harm is a question of fact "subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.* at 842.

In this case, Matias alleges that Anderson dismissed Silver's threats, demands, and aggressive behavior in response to the decision to move Matias into his cell. When Matias

4

showed hesitance to enter the cell, Anderson threatened to move him to segregation if he did not comply. As a result, Matias entered the cell, and Silver assaulted him shortly thereafter. Construed liberally, those allegations plausibly state an Eighth Amendment claim against Anderson for her failure to protect Matias from harm.

Matias has not, however, alleged any facts to support an Eighth Amendment claim against Chapdelaine, Weldon, or Ogando. He makes one conclusory statement that those defendants "knew or should have known" about Silver's aggressive behavior, but he alleges no facts to support such a statement. There are no facts showing how, if at all, Chapdelaine, Weldon, and Ogando became aware of Silver's situation or the decision to move Matias into his cell. Therefore, the Eighth Amendment claim against those three defendants is dismissed.

B. Fourteenth Amendment Equal Protection

The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The Clause "protects prisoners from invidious discrimination." *Riddick v. Arnone*, 11 Civ. 631 (SRU), 2012 WL 2716355, *3 (D. Conn. Jul. 9, 2012). It does not, however, require identical treatment for each individual; rather, it requires that a similarly situated person be treated the same. *City of Cleburne, Tex.*, 473 U.S. at 439-40. "To state a claim for an equal protection violation, a plaintiff must plausibly allege that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Rossi v. Fischer*, 13 Civ. 3167 (PKC/DF), 2015 WL 769551, *13 (S.D.N.Y. Feb. 24, 2015) (quoting *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005)).

5

A prisoner may also state an Equal Protection claim under the "class of one theory." To state such a claim, he must allege that (1) he has been intentionally treated differently than other similarly situated inmates; and (2) there is no rational basis for the disparity in treatment. *Holmes v. Haugen*, 356 F. App'x 507, 509 (2d Cir. 2009); *Green v. Martin*, 224 F. Supp. 3d 154, 171 (D. Conn. Dec. 14, 2016). The prisoner must allege an "extremely high" level of similarity with the person to whom he is comparing himself. *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005). His circumstances and the other person's must be "prima facie identical." *Id.* at 105.

Matias has not alleged any facts in this case that would support a Fourteenth Amendment Equal Protection Clause claim. He has not alleged either that he was a member of a protected class of inmates or that he was treated differently than other similarly situated inmates. Thus, his Fourteenth Amendment claim is dismissed.

    C.    <u>ADA Claim</u>

To state a claim under the ADA, Matias must allege: (1) that he is a "qualified individual" with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability. *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (quoting *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003)). A "qualified individual" is:

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

*Id.* (quoting 42 U.S.C. § 12131(2)). "A qualified individual can base a discrimination claim on any of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Id.* (quoting *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003)).

Aside from alleging that he is disabled, Matias has not alleged any facts supporting an ADA claim against any of the defendants. He has not alleged facts showing that they discriminated against him, excluded him from any programs or activities, or failed to make any reasonable accommodations for him. Therefore, I will dismiss the ADA claim.

D. State Law Claims

In addition to his constitutional and ADA claims, Matias is suing all defendants for negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress. Although not clearly stated in his complaint, his factual allegations also support claims for assault and battery against Silver. I can exercise supplemental jurisdiction over a state law claim if:

> (1) there is a claim arising under the federal constitution or federal laws; (2) the relationship between the federal claim and the state claim permits the conclusion that the entire action comprises but one constitutional case; (3) the federal claim has substance sufficient to confer subject matter jurisdiction on the court; and (4) the state and federal claims derive from a common nucleus of operative fact.

*Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir. 1989), *abrogated on other grounds*, *Graham v. Connor*, 490 U.S. 386 (1989) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)).

To prevail on a negligence claim, Matias must show that the defendants owed him a duty, that the duty was breached, and that he suffered an actual injury as a result of that breach. *See Considine v. Waterbury*, 279 Conn. 830, 858 (2006).

To state a claim for *negligent* infliction of emotional distress under Connecticut law, Matias must allege:

> (1) that the defendant[s'] conduct created an unreasonable risk of causing [him] emotional distress; (2) [his] distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant[s'] conduct was the cause of [his] distress.

*Lavoie v. United States*, 361 F. App'x 206, 207 (2d Cir. 2010) (quoting *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444 (2003)).

To state a claim of *intentional* infliction of emotional distress under Connecticut law, Matias must allege that:

> (1) the defendant[s] intended to inflict emotional distress or that [they] knew or should have known that emotional distress was the likely result of [their] conduct; (2) . . . the defendant[s'] conduct was extreme and outrageous; (3) . . . the defendant[s'] conduct was the cause of [Matias'] distress; and (4) . . . the resulting emotional distress sustained by [Matias'] was severe.

*Id.* (quoting *Appleton v. Bd. of Educ. of the Town of Stonington*, 254 Conn. 205, 210 (2000)).

"A civil assault is defined, [under Connecticut law], as 'the intentional causing of imminent apprehension of harmful or offensive contact with another.'" *Germano v. Dzurenda*, 09 Civ. 1316 (SRU), 2011 WL 1214435, *22 (D. Conn. Mar. 28, 2011) (quoting *Dewitt v. John Hancock Mutual Life Ins. Co.*, 5 Conn. App. 590, 594 (1985)). "[A]n actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a

8

harmful contact with the person of the other directly or indirectly results." *Id.* (quoting *Alteiri v. Colasso*, 168 Conn. 329, 334 n.3 (1975)).

As shown above, the only plausible claim under the United States Constitution in this case is the Eighth Amendment claim against Anderson for her failure to protect Matias from the assault by Silver. Matias' negligence claim against Anderson arises from the same set of facts as the Eighth Amendment claim. Thus, I will exercise supplemental jurisdiction over the negligence claim. I will also exercise supplemental jurisdiction over the assault and battery claim against Silver because those claims arose from the same set of facts as the Eighth Amendment claim and are factually supported. However, Matias has failed to allege sufficient facts to support a claim for negligent infliction of emotional distress or intentional infliction of emotional distress against any of the defendants. Therefore, I will dismiss all state law claims except for the negligence claim against Anderson and the assault and battery claim against Silver, which I will allow to proceed in conjunction with the Eighth Amendment claim.

E. <u>Claim for Damages Against Anderson and Silver in their Official Capacities</u>

To the extent Matias is suing Anderson in her official capacity for damages, that claim is barred by the Eleventh Amendment; *see Kentucky v. Graham*, 473 U.S. 159 (1985); *Quern v. Jordan*, 440 U.S. 332, 342 (1979); and is, therefore, dismissed. Because Silver is not a government actor, Matias is limited to suing him in his individual capacity.

F. <u>Declaratory Relief</u>

Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of that right or a disturbance of the relationship." *Colabella v. American Inst. Of Certified Pub. Accountants*, 10 Civ. 2291 (KAM)

9

(ALC), 2011 4532132, *22 (E.D.N.Y. Sep. 28, 2011) (citations omitted). Declaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages. *See In re Combustion Equip. Assoc., Inc.*, 838 F.3d 35, 37 (2d Cir. 1998).

Matias' request for declaratory relief in this case only concerns Anderson's and Silver's past actions. He has not identified any legal relationships or issues that require resolution by declaratory relief. *See Ward v. Thomas*, 207 F.3d 114, 119-20 (2d Cir. 2000) (Eleventh Amendment bars declaration that state violated federal law in the past). Therefore, his claim for declaratory relief is unwarranted and is hereby dismissed.

**ORDERS**

(1) Matias' claims against Chapdelaine, Weldon, and Ogando are dismissed. His Eighth Amendment and negligence claims may proceed against Anderson in her individual capacity for damages and in her official capacity for injunctive relief. His assault and battery claim may proceed against Silver in his individual capacity for damages. All other state tort and constitutional claims are dismissed.

(2) The Clerk shall verify the full names and current addresses for Officer Anderson and inmate Mark Silver with the DOC Office of Legal Affairs. When such information is received, the clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is then directed to effect service of the complaint on Anderson in her official capacity at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from date said packet is received and to file a return of service within **thirty (30) days** from the same date. The clerk shall also mail two waiver of service of process request packets containing the complaint to Anderson and Silver at the

confirmed addresses within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver requests on the **thirty-fifth (35) day** after mailing. If Anderson and/or Silver fail to return the waiver requests, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him/her, and he/she shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(3) Anderson and Silver shall file their responses to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(4) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed within **six months (180 days)** from the date of this order. Discovery requests need not be filed with the court.

(5) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this order.

It is so ordered.

Dated at Bridgeport, Connecticut this 12th day of February 2018.

                                                         /s/ STEFAN R. UNDERHILL
                                                         Stefan R. Underhill
                                                         United States District Judge